# Exhibit D

**Professional Governmental Underwriters, LLC**
**The Authority.**



## Educators Legal Liability and Employment Practices Liability

**Date:** 08/1/2023

**Proposed Insured:** Union Institute & University
2090 Florence Avenue
Cincinnati, OH 45206

**Application #:** ELL0950761-04-REN

Thank you very much for your submission. Based upon the information received and subject to the limitations outlined below, we are pleased to offer the following:

## QUOTATION

**Coverage:**   See coverage form PGU ELL 2001 (04/2017) for terms, conditions and limitations

**Form:**   Claims Made

**Retro Date:** None - Full Prior Acts

**Insurer Information:**   Indian Harbor Insurance Company
A member of the AXA XL Group of Companies
Best Rating: A+
Surplus Lines Insurer

**Filings / Taxes:**  PGU Not Responsible For Tax Filings

**Quotation / Indication valid until:   8/1/2023**

If we are offering coverage on a surplus lines basis, the agent is responsible for handling of filings unless we note otherwise on this quotation.  If we have provided terms using bid specifications or an application other than ours, the quote is subject to change pending review of a completed and signed PGU application.

**Educators Legal Liability and Employment Practices Liability**                                      Page 2

Proposed Insured:     Union Institute & University

| Terms | Limits | Retentions<br>each claim including LAE | Premium |
|---|---|---|---|
| Educators Legal Liability | $1,000,000 | $50,000 | $35,832.00 |
| Employment Practices Liability | $1,000,000 | $50,000 | Included |
| Policy Aggregate | $1,000,000 | | |
| Defense Reimbursement Payments | $50,000 | $50,000 | Included |
| Defense Reimbursement Payments Aggregate | $100,000 | | |

| Features/Enhancements | | |
|---|---|---|
| Punitive Damages | See Retentions Above | Included |
| Personal Injury | See Retentions Above | Included |
| Third Party Wrongful Acts | See Retentions Above | Included |
| Back Pay / Front Pay | See Retentions Above | Included |
| Non-Monetary Relief | See Retentions Above | Included |
| Loss of Earnings | See Retentions Above | Included |

| Optional Increased Limits | Additional Premium |
|---|---|
| 2,000,000 CSL | $10,451.00 |
| 3,000,000 CSL | $5,226.00 |
| 4,000,000 CSL | $2,615.00 |
| 5,000,000 CSL | $1,500.00 |

**Premium, Fees and Taxes**

| | | |
|---|---|---|
| | Total Premium: | $55,624.00 |
| | Policy Fee : | $245.00 |

Premium Summary
| | |
|---|---|
| Annual Premium | $55,624.00 |
| Carrier Fee | $245.00 |
| Filing Fee | $25.00 |
| Surplus Lines Tax 5% | $2,793.45 |
| Total Due | $58,687.45 |

**Comments:**
By purchasing this coverage, you will have the opportunity to register for our PGU Employer Resource Center that provides unlimited, specific, documented, and confidential advice from employment law attorneys. It also provides on-line training courses, including sexual harassment prevention, available for both supervisors and employees. As well as, on-line tools; a state-specific employee handbook builder, forms, posters, news, and more.

**Educators Legal Liability and Employment Practices Liability**

**Proposed Insured:**   Union Institute & University

| SUBJECTIVITIES - WE MUST BE PROVIDED WITH THESE ITEMS BEFORE COVERAGE CAN BE BOUND: |
| --- |

1) Completed OH Surplus lines affidavit is required to bind coverage.

**Reminders:**

A written request is required to bind coverage.

Backdating of coverage is not allowed.

See attached Coverage Features attachment for additional information.

We will not cancel flat after inception date.

Engineering Fee is non-refundable.

Limits, retentions, terms and conditions quoted do not necessarily match those requested.

This proposal contains a brief outline of coverages to be included in any policy that may be issued in the future.

This is only a summary and the Terms and Conditions of any policy will take precedence over any proposal.

Minimum Earned Premium is the GREATER of $1,500 or 25% of annual premium.

**Applicable Forms:**   (Other forms may apply.  Consult Underwriter for details.)

| | |
| --- | --- |
| PGU ELL 2000 08 19 | Educators Liability and Employment Practices Liability Declarations |
| IL MP 9104 0314 IHIC 03 14 | In Witness |
| PGU 2002 04 17 | Schedule of Policy Forms and Endorsements |
| PGU ELL 2001 04 17 | Educators Liability and Employment Practices Liability Insurance Policy |
| PGU 1052 (ELL) 04 17 | Minimum Earned |
| PGU ELL 1120 04 17 | Harassment / Bullying Coverage |
| PGU 1133 01 22 | US Professional Indemnity - Cyber Exclusion |
| XL-OHSOP 11 10 | Service of Process |
| PN CW 01 01 22 | Notice to Policyholders - Fraud Notice |
| PN CW 02 01 19 | Notice to Policyholders - Privacy Policy |
| PN CW 05 05 19 | Notice to Policyholders - U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") |



**Ohio** | **Department of Insurance**

Mike DeWine, *Governor*     Tynesia Dorsey, *Interim Director*
Jon Husted, *Lt Governor*

## Surplus Lines Statement

OPRAS Division (PC), 50 W Town Street, 3rd Floor - Suite 300, Columbus OH 43215
614-644-2635 | Fax 614-728-1280 | insurance.ohio.gov

---

> **NOTE: Form is to be returned to the broker or agent, not to Ohio Department of Insurance.**

### PART 1.  STATEMENT OF SURPLUS LINE BROKER OR ORIGINATING AGENT

**DAVID H BOE** _____ acknowledges that he/she is a duly licensed full multiple line agent currently licensed with insurance companies, other than life, authorized to do business in Ohio or he/she is a duly licensed surplus line broker pursuant to section 3905.30 of the Ohio Revised Code and that after due diligence, he/she is unable to procure the insurance policy described below from insurers authorized to do business in Ohio to which he/she is a licensed agent.

Property or risk to be insured: **PROFESSIONAL/EPLI** _____

He/she acknowledges that he/she has complied with the applicable requirements of due diligence as set forth in section 3905.33 of the Ohio Revised Code, and has explained to the insured the meaning of the signed statements prior to binding coverage and received declinations for the reasons set forth below from the following authorized insurer(s) to which he/she is so licensed and which are known to him/her to customarily write the kind of insurance described above.

| | INSURERS | REASONS |
|---|---|---|
| 1. | TRAVELERS | CLASS OF BUSINESS |
| 2. | LIBERTY | CLASS |
| 3. | WESTFIELD | CLASS |
| 4. | CNA | CLASS |
| 5. | AUTO OWNERS | CLASS |

Signature of Surplus Line Broker or Originating Agent

### PART 2.  SIGNED STATEMENT OF INSURED AS REQUIRED BY SECTION 3905.33 OF THE OHIO REVISED CODE

The named insured **UNION** _____, acknowledges that the insurance policy (other than life insurance) as described above is to be placed with an insurance company not authorized to do business in Ohio. The insured understands that the insurance company is not a member of the Ohio Insurance Guaranty Association and that Chapter 3955. of the Ohio Revised Code is not applicable to claimants or insureds of said insurance company. The surplus line broker shall collect the Ohio tax of five percent of the amount of the premium for the insurance policy at the time the insurance policy is delivered to the insured.

Signature of Insured: _____

---

> **NOTE: Form is to be returned to the broker or agent, not to Ohio Department of Insurance.**

## Professional Governmental Underwriters, LLC

## CLAIM REPORTING REFERENCE FORM

### IN CASE OF CLAIM—FOLLOW THESE INSTRUCTIONS

For your:
- Educators Liability and EPL policy
- Public Officials and EPL policy
- Police Professional Liability policy

### YOUR INSURANCE COMPANY FOR THE ABOVE IS:

- Indian Harbor Insurance Company
- Greenwich Insurance Company

### IF NOTICE OF SUIT OR INCIDENT IS RECEIVED:

- Do NOT assume or admit responsibility.
- Do NOT reveal your policy's limits of liability.
- Document your file with records of all employees/officials involved.
- Make NO statement to anyone except your legal counsel or insurance company representative.

### IMMEDIATELY REPORT ALL SUMMONS, CLAIMS AND EEOC INCIDENTS TO THE FOLLOWING LOCATION:

XL Catlin
Attention: Denese Davis
14643 Dallas Parkway, Ste 770
Dallas, TX 75254

Phone: 972.383.7186
Fax:     972.383.7177
Email: proclaimnewnotices@axaxl.com

### BE PREPARED TO INCLUDE WITH YOUR REPORT:

- Your policy number.
- Insured name.
- Insured address.
- Name of department involved.
- Name and phone number of official to be contacted.
- The official summons and notice of claim.

### MANAGING UNDERWRITER ISSUING THIS POLICY

Professional Governmental Underwriters, LLC
P.O. Box 2508
Glen Allen, VA  23058

### KEEP THIS FORM WITH YOUR POLICY

**The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.**





Premium: $55,624.00
Surplus Lines Filing Fee: $25.00
Carrier Fee: $245.00
Surplus Lines Tax: $2,793.45
Total: $58,687.45

**Regulatory Office**
Dept: Regulatory
505 Eagleview Blvd., Suite 100
Exton, PA 19341-1120
(800) 688-1840

**INSURANCE COMPANY PROVIDING COVERAGE:** Indian Harbor Insurance Company

## EDUCATORS LEGAL LIABILITY AND EMPLOYMENT PRACTICES LIABILITY INSURANCE DECLARATIONS

**POLICY NUMBER:** ELL0950761-05          **RENEWAL OF:** ELL0950761-04

### NOTICES

SUBJECT TO ITS TERMS, THIS POLICY PROVIDES COVERAGE FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. DEFENSE EXPENSES ARE GENERALLY PAID IN ADDITION TO THE LIMITS OF LIABILITY; EXCEPT THAT FOR SPECIFIC CLAIMS UNDER INSURING AGREEMENT A.1.b.  THE APPLICABLE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES.

PLEASE READ AND REVIEW THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.

Item 1.   NAMED INSURED:
Union Institute & University

ADDRESS:
2090 Florence Avenue
Cincinnati, OH 45206

Item 2.   POLICY PERIOD:   (a) Inception Date:  08/01/2023          (b) Expiration Date:  08/01/2024
(12:01 A.M. Standard Time at the Address Stated in Item 1.)

Item 3.   LIMITS OF LIABILITY:

(a)   Educators  Legal Liability
$ 5,000,000          **Company's** maximum Limit of Liability for all **Loss** from each **Claim** under **INSURING AGREEMENT** A.1.a.; or for **Loss** and **Defense Expenses** from each **Claim** under **INSURING AGREEMENT A**.1.b.

(b)   Employment Practices Liability and Third Party Liability
$ 5,000,000          **Company's** maximum Limit of Liability for all **Loss** from each **Claim** under **INSURING AGREEMENT A**.2.

(c)   Policy Aggregate
$  5,000,000_____   **Company's** maximum aggregate Limit of Liability for all **Loss** from all **Claims** under **INSURING AGREEMENT A**.1.a. and **INSURING AGREEMENT A**.2., and for all **Loss** and **Defense Expenses** from all **Claims** under **INSURING AGREEMENT A**.1.b.

(d)   Reimbursement of Defense Expenses
$  50,000_____   **Company's** maximum Limit of Liability for all **Defense Expenses** from each **Claim** under **INSURING AGREEMENT A**.3.

(e)   Reimbursement of Defense Expenses Aggregate
$  100,000_____   **Company's** maximum Limit of Liability for all **Defense Expenses** from all **Claims** under **INSURING AGREEMENT A**.3.

Item 4.   RETENTIONS

(a)   $  50,000_____   each and every **Claim** under **INSURING AGREEMENT A**.1.

(b)   $  50,000_____   each and every **Claim** under **INSURING AGREEMENT A**.2.

(c)   $  50,000_____   each and every **Claim** under **INSURING AGREEMENT A**.3

Item 5.   NOTICES REQUIRED TO BE GIVEN TO THE **COMPANY** MUST BE ADDRESSED TO:

AXA XL Claims                          Phone: 972.383.7186
P.O. Box 211547                        Fax: 972.383.7177
Dallas, TX 76211                       Email: proclaimnewnotices@axaxl.com

Item 6.   POLICY PREMIUM:                $55,624.00
Policy Fee                               $245.00

Total Policy Premium:               $55,869.00

Item 7.   RETROACTIVE DATE:  None - Full Prior Acts_____

Item 8.   ENDORSEMENTS ATTACHED AT POLICY ISSUANCE: REFER TO PGU 2002 04 17

Item 9.   PRODUCER NAME:   Professional Governmental Underwriters, LLC
          ADDRESS:         4870 Sadler Road, Suite 102
          CITY, STATE, ZIP:   Glen Allen, VA 23060

**THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE INSURED RELATING TO THIS INSURANCE.**

| 08/17/2023 | |
| --- | --- |
| Date | Authorized Representative |

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840


It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.


IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.


_____
Joseph Tocco
President

_____
Toni Ann Perkins
Secretary


IL MP 9104 0314 IHIC

©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue.

| Form Number | Edition Date | Description |
|---|---|---|
| PGU ELL 2000 | 2019-08-01 | Educators Liability and Employment Practices Liability Declarations |
| IL MP 9104 0314 IHIC | 2014-03-01 | In Witness |
| PGU 2002 | 2017-04-01 | Schedule of Policy Forms and Endorsements |
| PGU ELL 2001 | 2017-04-01 | Educators Liability and Employment Practices Liability Insurance Policy |
| PGU 1052 (ELL) | 2017-04-01 | Minimum Earned |
| PGU ELL 1120 | 2017-04-01 | Harassment / Bullying Coverage |
| PGU 1133 | 2022-01-01 | US Professional Indemnity - Cyber Exclusion |
| XL-OHSOP | 2010-11-01 | Service of Process |
| PN CW 01 | 2022-01-01 | Notice to Policyholders - Fraud Notice |
| PN CW 02 | 2019-01-01 | Notice to Policyholders - Privacy Policy |
| PN CW 05 | 2019-05-01 | Notice to Policyholders - U.S. Treasury Department's Office of Foreign Assets Control ("OF. |

PGU 2002 0417

# EDUCATORS LEGAL LIABILITY AND
# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE FORM
# (CLAIMS-MADE)

## TABLE OF CONTENTS

Page No.

A.  INSURING AGREEMENTS ............................................................................................ 3

  1.  Educators Legal Liability ............................................................................. 3

  2.  Employment Practices Liability and Third Party Liability .................................... 3

  3.  Reimbursement of Defense Expenses ............................................................. 3

  4.  Supplemental Payments ............................................................................... 3

B.  DEFENSE AND SETTLEMENT ..................................................................................... 4

C.  LIMITS OF LIABILITY / RETENTIONS ......................................................................... 4

  1.  Educators Legal Liability ............................................................................. 4

  2.  Employment Practices Liability and Third Party Liability .................................... 5

  3.  Policy Aggregate ....................................................................................... 5

  4.  Reimbursement of Defense Expenses ............................................................. 5

  5.  Retention .................................................................................................. 5

D.  EXCLUSIONS ............................................................................................................ 5

E.  DEFINITIONS ............................................................................................................ 7

F.  CONDITIONS ............................................................................................................ 13

  1.  Other Insurance: ....................................................................................... 13

  2.  Cooperation: ............................................................................................. 13

  3.  Subrogation: ............................................................................................. 13

  4.  Extended Reporting Period: ......................................................................... 13

  5.  Notice; Timing, and Interrelationship of Claims: .............................................. 14

  6.  Cancellation; No Obligation to Renew: .......................................................... 15

  7.  Representations: ........................................................................................ 15

  8.  Separation of Insureds; Protection of Innocent Insureds: .................................. 15

9.    No Action against Us: ................................................................................................... 15

10.    Insolvency of Insured: ................................................................................................. 16

11.    Non-Accumulation of Limits: ....................................................................................... 16

12.    Territory: ..................................................................................................................... 16

13.    Authorization and Notices: .......................................................................................... 16

14.    Changes: .................................................................................................................... 16

15.    Assignment: ................................................................................................................ 16

16.    Entire Agreement: ....................................................................................................... 16

17.    Choice of Law ............................................................................................................. 16

18.    Premium ..................................................................................................................... 17

19.    Conformity to Statute .................................................................................................. 17

20.    Headings ..................................................................................................................... 17

# EDUCATORS LEGAL LIABILITY AND
# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE FORM
# (CLAIMS-MADE)

Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine rights, duties and what is and what is not covered.  Throughout the Policy the words "**You**" and "**Your**" refer to the **Named Insured**. The words "**We**", "**Us**", "**Our**" and the "**Company**" refer to the Company providing this insurance.

This Policy is incomplete unless the Declarations and all applicable forms and endorsements are attached.  Words and phrases that appear in bold have special meaning and are defined in Section **E. DEFINITIONS**.  Singular words shall include the plural, and plural words shall include the singular.

## A.    INSURING AGREEMENTS

Subject to the Limits of Liability set forth in the Declarations, and all other terms and conditions of this Policy, **we** agree as follows:

1.    Educators Legal Liability

a.    **We** will pay on behalf of an **Insured Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or applicable Extended Reporting Period for an **Educators Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

b.    We will pay on behalf of an **Insured Loss** and **Defense Expenses** that the **Insured** becomes legally obligated to pay as a result of a **Claim** seeking, in whole or in part, **Non-Monetary Relief** at any stage of the **Claim**, and first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period for an **Educators Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

2.    Employment Practices Liability and Third Party Liability

**We** will pay on behalf of an **Insured Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period for an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

3.    Reimbursement of Defense Expenses

**We** will reimburse **Defense Expenses** incurred by an **Insured** in connection with a **Claim** alleging an **IEP Act**, **Collective Bargaining Act** or **Student Program Act** that is first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and arising out of a **Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

4.    Supplemental Payments

**We** will pay on behalf of an **Insured**, in addition to the Limits of Liability set forth in the Declarations, all reasonable expenses incurred by the **Insured** at **Our** request to assist **Us** in the investigation or defense of any **Claim**, including actual loss of earnings of an **Insured**, because of time off from work; provided that the most **We** will pay will be $500 per day, per **Insured**.  Such "expenses" shall not include salaries of **Your Employees**.

For purposes of this Section, a **Claim** will be deemed to have been made when an **Insured** receives notice of the **Claim**.

**B.      DEFENSE AND SETTLEMENT**

1.      **We** will have the right and duty to defend any **Claim** made against an **Insured** for a **Wrongful Act** covered under Section **A. INSURING AGREEMENTS**, Item 1. Educators Legal Liability or Item 2. Employment Practices Liability and Third Party Liability, even if the allegations of such **Claim** are groundless, false or fraudulent.  **We** will have no obligation to pay any **Loss** or **Defense Expenses**, or to defend any **Claim** after the applicable Limit of Liability set forth in Item 3. of the Declarations has been exhausted.

2.      For any **Claim We** defend under Section **B. DEFENSE AND SETTLEMENT**, Item 1., **We** will have the right to make investigations, conduct negotiations and enter into the settlement of any such **Claim** as **We** deem appropriate, with the consent of the **Insured**.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with **Our** recommendation, then, subject to the applicable Limit of Liability, **Our** liability for such **Claim** will not exceed:

   a.      The amount for which such **Claim** could have been settled by **Us** plus **Defense Expenses** up to the date the **Insured** refused to settle such **Claim**; plus

   b.      Sixty percent (60%) of any **Loss** or **Defense Expenses** in excess of the amount in Section **B.**2.a. above, incurred in connection with such **Claim**.

3.      It shall be the duty of the **Insured**, and not **Us**, to defend any **Claim** covered under Section **A. INSURING AGREEMENTS**, Item 3. Reimbursement of Defense Expenses.  The **Insured** shall have the right to select defense counsel for the investigation and defense of any such **Claim**, subject to **Our** consent and approval, which shall not be unreasonably withheld.

4.      **We** shall have no duty to continue to reimburse **Defense Expenses** after the applicable Limit of Liability for **Claims** arising under Section **A. INSURING AGREEMENTS**, Item 3. Reimbursement of Defense Expenses has been exhausted by the reimbursement of **Defense Expenses**.

**C.      LIMITS OF LIABILITY / RETENTIONS**

Regardless of the number of **Claims**, **Insureds** or claimants, **Our** liability under this Policy is limited as follows:

1.      <u>Educators Legal Liability</u>

   a.      The amount set forth in Item 3.(a) of the Declarations is the most **We** will pay for all **Loss** in excess of the Retention set forth in Item 4. of the Declarations resulting from each **Claim** covered under Insuring Agreement A.1.a.  The payment of **Defense Expenses** shall be in addition to, and will not reduce, the applicable Limits of Liability.

   b.      The amount set forth in Item 3.(a) of the Declarations is the most **We** will pay for all **Loss** and **Defense Expenses** in excess of the Retention set forth in Item 4. of the Declarations resulting from each **Claim** covered under Insuring Agreement A.1.b.  The payment of **Defense Expenses** shall be part of and not in addition to the applicable Limits of Liability, and **Our** payment of such **Defense Expenses** will reduce those Limits of Liability.

2.     <u>Employment Practices Liability and Third Party Liability</u>

The amount set forth in Item 3.(b) of the Declarations is the most **We** will pay for all **Loss** in excess of the Retention set forth in Item 4. of the Declarations resulting from each **Claim** covered under Insuring Agreement A.2. The payment of **Defense Expenses** shall be in addition to, and will not reduce, the applicable Limits of Liability.

3.     <u>Policy Aggregate</u>

The amount set forth in Item 3.(c) of the Declarations is the most **We** will pay for all **Loss** resulting from all **Claims** covered under Insuring Agreements A.1.a. and A.2., and for all **Loss** and **Defense Expenses** resulting from all **Claims** covered under Insuring Agreement A.1.b.

4.     <u>Reimbursement of Defense Expenses</u>

The amount set forth in Item 3.(d) of the Declarations is the most **We** will reimburse for all **Defense Expenses** resulting from each **Claim** covered under Insuring Agreement A.3. The amount set forth in Item 3.(e) of the Declarations is the most **We** will reimburse for all **Defense Expenses** resulting from all **Claims** covered under Insuring Agreement A.3. Payments under Insuring Agreement A.3. are in addition to the Limits of Liability applicable to all other insuring agreements.

5.     <u>Retention</u>

**Our** obligation to pay or reimburse **Loss** or **Defense Expenses** under this Policy will only be in excess of the applicable Retention set forth in Item 4. of the Declarations. **We** will have no obligation to pay all or any portion of any Retention amount on behalf of an **Insured**, although **We** may, at **Our** sole discretion, advance such amount, in which event the **Insureds** agree to repay any amounts so advanced upon written request.

**D.**    **EXCLUSIONS**

This Policy shall not apply to any **Claim** arising from or relating to:

1.     The performance of any willful misconduct or dishonest, fraudulent, criminal or malicious act, error or omission by an **Insured**; the willful violation by an **Insured** of any law, statute, ordinance, rule or regulation; or an **Insured** gaining any profit, remuneration or advantage to which such **Insured** is not legally entitled.

     Notwithstanding the above, **We** will defend the **Insured** or pay or reimburse **Defense Expenses** in connection with a **Claim** otherwise covered by this Policy until and unless the **Insured** admits, is adjudged or is otherwise proven to have committed any act, error or omission subject to this exclusion, in which case the **Insured** shall reimburse **Us** for any **Defense Expenses** advanced to or paid on behalf of such **Insured**.

2.     The special educational needs of any student with a disability as that term is defined under the Individuals with Disabilities Education Act or any similar state statute; provided that this exclusion shall not apply to the reimbursement of **Defense Expenses** under Insuring Agreement A.3.

3.     **Loss** or **Defense Expenses** covered under Insuring Agreements A.1. or A.2., if Insuring Agreement A.3. also applies.

4.     A **Claim**, other than one alleging an **Employment Practices Wrongful Act**, that is brought by, on behalf of, or in the name or right of **You** or any of **Your** directors, officers, regents, trustees or school board members, or their functional equivalents, unless in the form of a cross-claim or third-party complaint arising from a **Claim** made against such director, officer, regent, trustee or school board member that is otherwise covered under this Policy.

Notwithstanding the above, this exclusion shall not apply to a **Claim** brought by a former director, officer, regent, trustee or school board member who has not served in that capacity for at least three (3) years prior to the date such **Claim** is first made and where such **Claim** is brought and maintained without the support, solicitation, assistance, participation or intervention of the **Named Insured** or an **Insured** not otherwise subject to this exception.

5.  An actual or alleged violation of the Fair Labor Standards Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing; provided that this exclusion shall not apply to the extent that a **Claim** for an **Employment Practices Wrongful Act** alleges retaliatory action by an **Insured** in response to an **Employee's** exercise of rights under such statute or law.

6.  Damage to, destruction or loss of use of tangible property, **bodily injury**, corporal punishment, sickness, disease or death.

7.  Emotional distress, mental anguish, or humiliation not arising from an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

8.  **Sexual Abuse and Molestation**, including the allowance of or failure to prevent, stop, detect or reveal **Sexual Abuse and Molestation**.

9.  The actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, seepage, migration, release, growth, infestation, spread, escape, treatment, removal or disposal of, any **Pollutant**, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutant**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request.

10. A **Benefit Plan Act**, provided that this exclusion shall not apply to any **Claim** for actual or alleged retaliation with regards to benefits paid or payable. **We** will defend a **Claim** otherwise subject to this exclusion subject to a $25,000 Limit of Liability for all **Defense Expenses** in excess of the applicable Retention set forth in Item 4. of the Declarations. **Defense Expenses** payable under this section are part of and not in addition to the applicable Limits of Liability set forth in Item 3. of the Declarations, and payment of such **Defense Expenses** by **Us** will reduce such Limits of Liability.

11. An **Insured's** liability under a contract or agreement, other than a manual of employment policies or procedures issued by **You**, unless such liability would have attached in the absence of such express contract or agreement. This exclusion shall not apply to the payment of **Defense Expenses** in connection with a **Collective Bargaining Act** or to the payment of **Defense Expenses** incurred in connection with a **Claim** for an **Employment Practices Wrongful Act** in the form of an actual or alleged breach of a contract to commence or continue employment with **You**.

12. A failure to obtain, implement, effect, comply with, provide notice under or maintain insurance, reinsurance, self-insurance, suretyship or bond.

13. Facts, circumstances, situations, transactions, events or **Wrongful Acts**:

    a.  Underlying or alleged in any mediation, arbitration, grievance proceeding, litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date set forth in Item 2. of the Declarations:

        (1)  to which an **Insured** is or was a party; or

(2)    with respect to which an **Insured,** as of the Inception Date set forth in Item 2. of the Declarations, knew or should reasonably have known that an **Insured** would be made a party thereto;

b.    Which was the subject of any notice given prior to the Inception Date set forth in Item 2.of the Declarations under any other Policy of insurance or plan or program of self-insurance; or

c.    Which was the subject of any **Claim** made prior to the Inception Date set forth in Item 2.of the Declarations.

If, however, this Policy is a renewal of one or more policies issued by **Us** or an affiliate to **You**, and such coverage was in effect without interruption from the inception date of the first such Policy to the Inception Date of this Policy, the reference in this exclusion to the Inception Date will be deemed to refer instead to the Inception Date of the first Policy under which **We** or an affiliate began to provide **You** with the continuous and uninterrupted coverage of which this Policy is a renewal.

14.    A lockout, strike, picket line, hiring of replacement workers, riot or other civil commotion or other similar actions in connection with labor disputes or labor negotiations; provided that this exclusion shall not apply to the payment of **Defense Expenses** covered under Insuring Agreement A.3.

15.    Construction, architectural, engineering, legal, procurement, security or other professional services, including any contract or agreement pertaining to such services.

16.    War, whether or not declared, or any act or condition incidental to war, including civil war, insurrection, rebellion or revolution; or **Terrorism**.

17.    The failure to integrate or desegregate student enrollment, or the operation or administration of any student program on a discriminatory basis, whether in violation of a court order or otherwise; provided that this exclusion shall not apply to the reimbursement of **Defense Expenses** in connection with a **Student Program Act**.

18.    The actual or alleged performance of or failure to perform **Medical Services** by an **Insured** or any person or entity for whom an **Insured** may be legally liable, or the supervision, hiring, retaining or accreditation of or granting of privileges to any person performing **Medical Services**.

19.    The Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, or any other federal, state or local securities law, or any rule or regulation promulgated under any of the foregoing; or any provision of the common law imposing liability in connection with the offer, sale or purchase of securities.

20.    The sale or offering of securities by **You**, whether or not such securities are exempt from registration by the SEC; **Your** actual or proposed filing for an Initial Public Offering; or a debt offering or debt financing, including but not limited to bonds, notes, debentures and guarantees of debt.

21.    Tax credits or tax incentives or the application thereof; the formulation of tax rates; the assessment, appraisal or valuation of property; the assessment of taxes or other fees; the collection of taxes, fees or other amounts; and the disbursement of tax refunds.

## E.    DEFINITIONS

Whenever used in this Policy, the term:

1.    **Application** means all applications submitted to **Us**, including any and all attachments and other materials submitted to **Us** in connection with the underwriting of this Policy or for any other policy of

which this Policy is a renewal.

2.   **Benefit Plan Act** means a **Claim** alleging liability under a pension, profit sharing, welfare benefit or other employee benefit program established in whole or part for the benefit of an **Insured**, or based upon, arising out of or in any way involving the Employee Retirement Security Act of 1974 (except Section 510 thereof) or any amendments thereto or regulations promulgated thereunder or similar provisions of any federal, state or local law or common law.

3.   **Bodily Injury** means physical injury, sickness or disability of a person, including mental incapacity or death resulting from any of these at any time.

4.   **Business Invitee** means a natural person, solely in their capacity as one who is invited to enter into and remain on any **Premises** for a purpose directly or indirectly connected with **Your** business or commercial dealings therein.  A Business Invitee does not include a trespasser or any person who enters any **Premises** without **Your** knowledge or permission, or any **Employee**, student or minor.

5.   **Claim** means:

   a.   A written demand for monetary damages or **Non-Monetary Relief**;

   b.   A written request to toll or waive any statute of limitations, or to waive any contractual time bar, relating to a potential suit against an **Insured** for a **Wrongful Act**;

   c.   A civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

   d.   A criminal proceeding that is commenced by the return of an indictment or similar document;

   e.   An administrative or regulatory proceeding or investigation, including a proceeding brought by or before the Equal Employment Opportunity Commission or similar state or local agency, commenced by the filing of a notice of charges, formal order of investigation or similar document; or

   f.   An arbitration proceeding or other alternative dispute resolution proceeding, to which the **Insured** must submit or does submit with **Our** consent.

6.   **Collective Bargaining Act** means a **Claim** made by or on behalf of an **Employee** that at all times during the course of such **Claim** exclusively alleges the breach of a collective bargaining agreement.

7.   **Defense Expenses** means reasonable legal fees and expenses **We** incur for the investigation, defense and appeal of a **Claim** by attorney(s) retained by **Us**, as well as all other fees, costs or expenses resulting from the investigation, adjustment, defense and appeal of such **Claim** by **Us**, or by **You** with **Our** prior, written consent.  Defense Expenses does not include any expenses incurred by **You** prior to the date a **Claim** is first reported to **Us**, nor does it include the time and expense incurred by **You** in resolving a **Claim**, including but not limited to the costs of **Your** in-house counsel.

8.   **Educators Wrongful Act** means:

   a.   Any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty, including any **Personal Injury**, by an **Insured**, committed in the performance of his or her duties for **You**;

b. Any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by any natural person **Insured** while serving at the direction or request of the **Named Insured** in the natural person **Insured's** capacity as a board member or committee member of an organization, other than the **Named Insured**, that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code.  The coverage provided by this Subsection b. is excess of, and shall not contribute with, any other insurance plan or program of self-insurance carried by such not-for-profit corporation, and any contribution or indemnification to which a natural person **Insured** is entitled to from such not-for-profit organization;

c. Any matter claimed against an **Insured** solely by reason of his or her status as an **Insured** during the **Policy Period** and committed solely in the performance of duties for **You**.

An Educators Wrongful Act shall not include an **Employment Practices Wrongful Act** or a **Third Party Wrongful Act**.

9. **Employee** means the following natural persons, but only for **Wrongful Acts** committed while acting within the scope of employment for **You**:

a. Full-time, part-time, seasonal and temporary Employees, including, but not limited to, any teachers, principals, assistant principals, deans, administrators or similar educational service providers;

b. Teachers, administrators and similar educational service providers under written contract with, or under retainer for services provided for or on **Your** behalf;

c. Student teachers and student aides; and

d. Persons who perform services on a volunteer basis for **You**, and under **Your** direction and control.

10. **Employment Practices Wrongful Act** means any of the following, when alleged by any of **Your** past or present **Employees** or any applicant for employment with **You**, in connection with that person's actual or proposed employment relationship with **You**:

a. Wrongful dismissal, discharge or termination of employment, whether actual or constructive;

b. Harassment (including sexual harassment whether "quid pro quo," hostile work environment or otherwise);

c. Discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws;

d. Breach of any manual of employment policies or procedures issued to the **Insureds** by **You**;

e. Retaliatory action in response to that **Employee's**:

(1) disclosure or threat of disclosure of any act by an **Insured** alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

(2) actual or attempted exercise of any right that **Employee** has under law;

(3) filing of any **Claim** under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower" law;

f. Misrepresentation, libel, slander, humiliation, defamation, invasion of privacy, infliction of emotional distress or mental anguish;

g. Wrongful failure to employ or promote, wrongful deprivation of career opportunity, including tenure, wrongful demotion or evaluation or wrongful discipline; or

h. Breach of a contract to commence or continue employment with **You**.

An Employment Practices Wrongful Act shall not include an **Educators Wrongful Act**.

11. **IEP Act** means a **Claim** under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, or any similar state or federal statute, whether brought as a due process hearing, mediation, arbitration or lawsuit to address a dispute between the **Named Insured** and its student, or the parent or guardian of a student of the **Named Insured**, concerning: the **Named Insured's** proposal of, or refusal to initiate or change the identification, evaluation or provisions of, an Individual Education Plan ("IEP") or 504 Plan for such student; the implementation of the IEP or 504 Plan for such student; the educational placement of such student; or the provision of a free appropriate public education.

12. **Insured** means:

a. **You**;

b. **Your** past, present or future duly elected, appointed or employed directors, officers, regents, trustees or school board members, or their functional equivalents;

c. **Employees**;

d. In the event of the death, incapacity or bankruptcy of a natural person Insured, such Insured's estate, heirs, legal representatives or assigns, but only in connection with a **Claim** arising from a **Wrongful Act** against the Insured individual; and

e. The lawful spouse or domestic partner of any individual Insured identified in the paragraphs above, but only with respect to liability arising out of **Wrongful Acts** committed by such individual, and provided that such spouse or domestic partner is represented by the same counsel as such individual with respect to any **Claim**.

13. **Loss** means damages, pre-judgment interest, post-judgment interest, front pay and back pay, judgments, settlements, punitive or exemplary damages where insurable under applicable law, or other amounts that an **Insured** is legally obligated to pay as a result of a **Claim**.

Loss will not include:

a. **Defense Expenses**;

b. **Non-Monetary Relief**;

c. Any amount representing the value of diminished or lost retirement, health care or other benefits;

d. Fines, taxes, penalties;

e. The cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA);

f.     Amounts due under any contract to commence, continue or separate from employment with **You**, including but not limited to the value of any compensation or employment benefits lost, or the cost of specific performance in connection with any such contract; or

g.     The multiplied portion of multiplied damages; provided that Loss will include any multiplied damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act ("Specified Multiplied Damages") that an **Insured** is obligated to pay as a result of a **Claim**, but only if such Specified Multiplied Damages are insurable under applicable law.

For the purpose of determining the insurability of punitive damages, exemplary damages or Specified Multiplied Damages under this Policy, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction:

(1)     is the location of the court which awarded or imposed such punitive, exemplary damages or Specified Multiplied Damages;

(2)     is where **You** are incorporated or otherwise organized or have a place of business; or

(3)     is where **We** are incorporated or has **Our** principal place of business.

14.     **Medical Services** means services performed in the treatment or care of any person, including but not limited to: medical, dental, nursing, psychiatric, osteopathic, chiropractic or other medical professional care or services; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, dental or surgical supplies, equipment or appliances in connection with such treatment or care; the furnishing of food or beverages in connection with such treatment or care; the providing of counseling or social services in connection with such treatment or care; and the handling of or performance of post-mortem examinations on human bodies, including autopsies, organ donations or other procedures.  Medical Services shall also include an **Insured's** activities as a member of an accreditation, standards review or professional review board, quality assurance board or committee, or any similar board or committee for a healthcare entity or organization.

15.     **Named Insured** means the educational entity set forth in Item 1. of the Declarations.

16.     **Non-Monetary Relief** means relief or redress in any form other than compensatory or monetary damages, including: the costs of complying with any injunctive, declaratory or equitable relief, remedy or order; the costs of compliance with the Americans with Disabilities Act or any similar provisions of federal, state or local statutory or common law; and any award of claimant's or plaintiff's attorneys fees or costs, whether or not provided for by statute, but only with respect to **Claims** seeking such Non-Monetary Relief.  Non-Monetary Relief shall not include the cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA).

17.     **Personal Injury** means the following, when alleged against an **Insured** by an entity or a person who is not a past or present **Insured**, or applicant for employment with the **Insured**: libel, slander, or other defamation, invasion of privacy, false arrest, wrongful detention or imprisonment, malicious prosecution, wrongful entry or eviction, infringement or copyright or trademark, or other unauthorized use of title, or plagiarism or misappropriation of ideas.

18.     **Policy Period** means the period from the Inception Date of this Policy set forth, in Item 2. of the Declarations, to the Expiration Date of this Policy set forth in Item 2. of the Declarations, or to any earlier cancellation date of this Policy.

19. **Pollutant** means any of the following:

    a. Smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including medical or pharmaceutical supplies and materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, Pollutants or contaminants;

    b. Mold(s), mildew(s), fungi and/or spore(s); or any materials, goods or products containing, harboring or nurturing any such mold(s), mildew(s), fungi and/or spore(s);

    c. Lead, silica or asbestos, whether or not airborne as a particle, contained in or formed as part of a product, structure or other real or personal property, ingested or inhaled or transmitted in any fashion, or found in any form whatsoever; or

    d. Nuclear reaction, radioactive contamination or any radiation of any kind, including but not limited to nuclear radiation and electromagnetic radiation.

20. **Premises** means the following, if located in the continental United States:

    a. A building, facility or other real property including adjoining ways, which **You** own, rent or lease and is used by **You** to conduct **Your** business, including administration, maintenance and recreational facilities;

    b. A building, facility, or other real property being visited by **Your** elected, appointed or employed, directors, officers, regents, trustees, or school board members, or their functional equivalents, or **Employees**, on an official business trip on **Your** behalf;

    c. A vehicle that **You** own or lease pursuant to a written contract, but solely if being used in the transportation of **Your** elected or appointed or employed, directors, officers, regents, trustees or school board members, or their functional equivalents, or **Employees**.

Premises does not include any location for an event independently organized by **Employees** or others without **Your** knowledge or approval.

21. **Related Claims** means all **Claims** based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, casually or in any other way.  All Related Claims will be deemed to be a single **Claim** for purposes of Section **C. LIMITS OF LIABILITY / RETENTIONS**, Item 5.

22. **Retroactive Date** means the applicable date set forth in Item 7. of the Declarations.

23. **Sexual Abuse and Molestation** means any actual or alleged conduct, physical act, gesture or spoken or written word of a sexual nature directed by an **Insured**, or by any person for whom an **Insured** is legally responsible, toward any of **Your** students or any minor not a student of **You**, and including without limitation any actual, alleged or threatened sexual intimacy (even if allegedly consensual), molestation, assault or battery, exploitation or any other sexual act.

24. **Student Program Act** means a **Claim** alleging the failure to integrate or desegregate student enrollment, or the operation or administration of any student program on a discriminatory basis, whether in violation of a court order or otherwise.

25. **Terrorism** means "Certified Acts" as defined by the Terrorism Risk Insurance Act of 2002, or any subsequent amendments or reauthorizations of such Act (TRIA).

26. **Third Party Wrongful Act** means any of the following, when alleged against an **Insured** by **Your Business Invitee** or by a third party individual (other than another **Insured**, student or minor) with

whom an **Insured** interacts outside of the **Premises** for the purpose of conducting official business on **Your** behalf:

a.  Harassment (including sexual harassment);

b.  Discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws; or

c.  Invasion of privacy.

A Third Party Wrongful Act shall not include an **Educators Wrongful Act**.

27.  **Wrongful Act** means, for purposes of Insuring Agreements A.1. or A.2., an **Educators Wrongful Act**, **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.  For purposes of Insuring Agreements A.3.  Wrongful Act means an **IEP Act**, **Collective Bargaining Act** or **Student Program Act**.

F.  **CONDITIONS**

1.  **Other Insurance:**

Insurance provided under this Policy will be excess of and will not contribute with other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess of this Policy by reference in such other policy to the Policy number of this Policy.  This Policy will not be subject to the terms of any other insurance.

In the event that coverage is available for a **Claim** under any other insurance policy that applies to Claims for **Bodily Injury**, **Personal Injury** or property damage, **We** will have no duty to defend such **Claim**, or to pay any **Defense Expenses** incurred by **You** or on **Your** behalf, or to contribute to or reimburse **Defense Expenses** incurred by such other insurance policy in connection with such **Claim**.

2.  **Cooperation:**

In the event of a **Claim**, the **Insured** will provide **Us** with all information, assistance and cooperation that **We** reasonably request, and will do nothing that may prejudice **Our** position or potential or actual rights of recovery.  The **Insured** shall not make any payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense without **Our** consent.  At **Our** request, the **Insured** will assist in any actions, suits, or proceedings, including but not limited to attending hearings, trials and depositions, securing and giving evidence, and obtaining the attendance of witnesses, and will also assist in making settlements.

3.  **Subrogation:**

**We** will be subrogated to the extent of any payment **We** make under this Policy to all of the rights of recovery of the **Insured**.  The **Insured** will execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable **Us** effectively to bring suit in their name.  The obligations of the **Insured** under this condition will survive the expiration or cancellation of the Policy.

4.  **Extended Reporting Period:**

a.  If this Policy is cancelled or non-renewed for any reason other than nonpayment of premium, the **Named Insured** will have the right to:

(1)     a seventy-five (75) day Automatic Extended Reporting Period, beginning on the effective date of such cancellation or non-renewal, for no additional premium charge; and

(2)     to purchase an Additional Extended Reporting Period, beginning on the effective date of the cancellation or non-renewal, for an additional premium; provided that the **Named Insured** elects to purchase the Additional Extended Reporting Period in writing and provides **Us** any additional premium due within thirty (30) days of the effective date of cancellation or non-renewal, subject to the available options as set forth in subparagraph c.

b.      The coverage otherwise afforded by this Policy will be extended to apply to **Loss** or **Defense Expenses** from **Claims** first made during the Extended Reporting Period, but only if such **Claims** are for **Wrongful Acts** committed on or after the **Retroactive Date** and before the end of the **Policy Period**.  An Extended Reporting Period does not increase or reinstate any Limit of Liability and may only be effective if all premiums and retentions due under the Policy have been paid.  The Automatic Extended Reporting Period shall not become effective if the **Insured** procures replacement coverage.  Once purchased, the Extended Reporting Period may not be canceled and the premium shall be deemed fully earned.

c.      Extended Reporting Period Options:

(1)     a one (1) year extended reporting period for an additional premium of seventy percent (70%) of the Premium set forth in Item 6. of the Declarations;

(2)     a two (2) year extended reporting period for an additional premium of one hundred percent (100%) of the Premium set forth in Item 6. of the Declarations; or

(3)     a three (3) year extended reporting period for an additional premium of one hundred and fifty percent (150%) of the Premium set forth in Item 6. of the Declarations.

5.     **Notice; Timing, and Interrelationship of Claims:**

a.      As a condition precedent to any right to payment under this Policy, the **Insured** must give **Us** written notice of a **Claim** with full details, as soon as practicable after any of **Your** school administrators becomes aware of such **Claim** and in no event, no later than seventy-five (75) days after the expiration of the **Policy Period**.

b.      If, during the **Policy Period**, the **Insured** first becomes aware of any **Wrongful Act** that may subsequently give rise to a **Claim**, and, as soon as practicable thereafter but before the expiration or cancellation of this Policy:

(1)     gives **Us** written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences that have resulted or may result from such **Wrongful Act**, the damages that may result from such **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

(2)     requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then **We** will treat any such subsequently resulting **Claim** as if it had been first made during the **Policy Period**.

c.      All notices under this condition must be sent in writing to the address or email address set

forth in Item 5. of the Declarations.

d.    All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with Condition 5.b., whichever is earlier.

6.    **Cancellation; No Obligation to Renew:**

a.    **We** may not cancel this Policy except for **Your** failure to pay a premium when due. **We** will deliver or mail by first class, registered or certified mail to **You** at **Your** last known address, written notice of cancellation at least twenty (20) days before the effective date of cancellation. Such notice shall state the reason for cancellation. A copy of such notice shall be sent to the agent of record.

b.    **You** may cancel this Policy by mailing to **Us** written notice stating when, not later than the Expiration Date set forth in Item 2. of the Declarations, such cancellation will be effective. In such event, return premium will be computed as 0.90 times the pro rata unearned premium shown in Item 6. of the Declarations and rounded to the nearest whole dollar. Premium adjustment may be made either at the time that cancellation by **You** is effective or as soon as practicable thereafter. If **Our** maximum aggregate Limit of Liability for Insuring Agreements A.1. and A.2., as set forth Item 3.(c) of the Declarations, is exhausted by the payment of **Loss** or **Defense Expenses**, the entire premium will be deemed fully earned.

c.    **We** will not be required to renew this Policy upon its expiration. If **We** elect not to renew this Policy, **We** will deliver or mail by first class, registered or certified mail to **You** at **Your** last known address, written notice to that effect at least sixty (60) days before the Expiration Date set forth in Item 2. of the Declarations. Such notice shall state the specific reason(s) for non-renewal. A copy of such notice shall be sent to the agent of record.

7.    **Representations:**

The **Named Insured** represents that the statements contained in the **Application** are true, accurate and complete, and agrees that this Policy is issued in reliance upon the truth thereof, which are deemed to be incorporated into and to constitute a part of this Policy.

8.    **Separation of Insureds; Protection of Innocent Insureds:**

a.    In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy will be void:

(1)    with respect to any natural person **Insured** who knew of such untruth, misrepresentation or omission; and

(2)    with respect to **You**, if, and only if, **Your** principal, assistant principal, dean, assistant dean, director, officer, regent, trustee or school board member, or any other person in a functionally equivalent position, knew of such untruth, misrepresentation or omission.

b.    No act, error or omission of any **Insured** will be imputed to any other **Insured** to determine the application of any exclusion set forth in Section **D. EXCLUSIONS** of this Policy. If it is determined that an exclusion applies to an **Insured** in connection with a **Claim**, no coverage shall be available under this Policy for such **Insured**, however, coverage shall continue in effect under this Policy for any other **Insured**, subject to all other terms, conditions, and exclusions herein.

9.    **No Action against Us:**

a.     No action may be taken against **Us** unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy and the amount of an **Insured's** obligation to pay has been finally determined either by judgment against an **Insured** after adjudicatory proceedings, or by written agreement of an **Insured**, the claimant and **Us**.

b.     No person or entity will have any right under this Policy to join **Us** as a party to any **Claim** to determine the liability of an **Insured**; nor may **We** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

10.     **Insolvency of Insured:**

**We** will not be relieved of any of **Our** obligations under this Policy by the bankruptcy or insolvency of an **Insured**.

11.     **Non-Accumulation of Limits:**

If coverage is provided under this Policy and any other policy or policies underwritten or reinsured by **Us** to **You**, the maximum amount payable in the aggregate under this Policy and all such other policies shall not exceed the single highest Limit of Liability available under all such policies.  Only one retention or deductible will apply, which shall be the retention or deductible corresponding to the Limit of Liability applied to the **Claim**.

12.     **Territory:**

This Policy applies to **Wrongful Acts** committed by an **Insured**, or to any **Claim** brought against an **Insured**, anywhere in the world.

13.     **Authorization and Notices:**

The **Insureds** agree that **You** will act on their behalf with respect to receiving any notices and return premiums from **Us**.

14.     **Changes:**

This Policy contains all the agreements between any and all **Insureds** and **Us** concerning this insurance.  The **Named Insured** is authorized on behalf of all **Insureds** to make changes in the terms of this Policy with **Our** consent.  This Policy's terms can be amended or waived only by endorsement issued by **Us** and made part of this Policy.

15.     **Assignment:**

No assignment of interest under this Policy will bind **Us** without **Our** consent.

16.     **Entire Agreement:**

The **Insured** agrees that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between every **Insured** and **Us** or any of **Our** agents relating to this insurance.

17.     **Choice of Law:**

All matters arising hereunder, including but not limited to questions related to the validity, interpretation, performance and enforcement of this Policy, shall be determined in accordance with the law and practice of the State of New York, notwithstanding New York's conflicts of law rules.

18.     **Premium:**

The **Named Insured** shall be responsible for payment of all premiums and will be the payee of any return premium.  The Policy premium may be changed at any time if the Policy terms and conditions are changed by, among other things, adding additional insureds, changing limits of liability or extending the **Policy Period**.  The **Named Insured** or its designee agrees to pay all increased premiums promptly in accordance with the Company's invoices.

19. **Conformity to Statute:**

All terms of this Policy that conflict with any applicable laws or regulations are hereby amended to conform to such laws or regulations.

20. **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof, the Insurer has caused this Policy to be executed on the Declarations Page.**

ENDORSEMENT NO._____

## MINIMUM EARNED PREMIUM UPON CANCELLATION

This Endorsement, effective at 12:01 a.m. on 08/01/2023 , forms part of

Policy No.: ELL0950761-05
Issued to: Union Institute & University
Issued by: Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

Section **F. CONDITIONS**, Item 6. **Cancellation; No Obligation to Renew**, Paragraph b. is deleted in its entirety and replaced as follows:

b.     **You** may cancel this Policy by mailing **Us** written notice stating when, no later than the Expiration Date set forth in Item 2.(b) of the Declarations, such cancellation will be effective.  In such event, the earned premium amount to be retained by **Us** will be the greater of:

(1)     The amount computed in accordance with **Our** customary short rate table and procedure;

(2)     25% of the total policy premium shown in Item 6. of the Declarations; or

(3)     $ 1,500.00 .

Premium adjustment may be made either at the time that cancellation by **You** is effective or as soon as practicable thereafter. If the Policy Aggregate Limit of Liability, as set forth Item 3.(c) of the Declarations, is exhausted by the payment of **Loss** or **Defense Expenses**, the entire premium will be deemed fully earned.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
(Authorized Representative)

ENDORSEMENT NO.\_\_\_\_\_

### HARASSMENT/BULLYING COVERAGE

This Endorsement, effective at 12:01 a.m. on 08/01/2023 , forms part of

Policy No.: ELL0950761-05
Issued to:  Union Institute & University
Issued by:  Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

I.      **We** will reimburse **Defense Expenses** incurred by an **Insured** in connection with a **Claim** alleging **Harassment or Bullying Activities** that is first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and arising out of **Harassment or Bullying Activities** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

II.     It shall be the duty of the **Insured**, and not **Us**, to defend such **Claims**. The **Insured** shall have the right to select defense counsel for the investigation and defense of such **Claims**, subject to **Our** consent and approval, which shall not be unreasonably withheld. **We** shall have the right to associate in the defense and settlement of any such **Claim**.

III.    The      most **We**      shall reimburse the **Insured** for all **Defense Expenses** from **Claims** arising out of **Harassment or Bullying Activities** is $50,000     , which shall be part of and not in addition to the Limit of Liability shown in the Declarations.

The Limit of Liability set forth above is the most **We** will pay for all **Claims** against one or more **Insureds** involving **Harassment or Bullying Activities**, whether alone or in combination with any other claims. If **Harassment or Bullying Activities** are alleged at any stage during a **Claim**, all allegations in that **Claim** and any **Related Claims** will be subject to the Limit of Liability as set forth in this Endorsement. If the **Company** has paid the Limit of Liability set forth herein, it will no longer be obligated to make any payment in connection with any **Claims** involving **Harassment or Bullying Activities**.

IV.     Each **Claim** arising out of **Harassment or Bullying Activities** that is covered by this Endorsement shall be subject to a Retention in the amount of $50,000 .

V.      The term **Harassment or Bullying Activities** as used in this Endorsement means:

Any gesture, or any written, verbal or physical act, or any electronic communication that is directed at a student or group of students, and takes place on school property, at any school-sponsored function or on a school bus, which a reasonable person should know, under the circumstances, will have the effect of:

a.      Harming a student, damaging the student's property, damaging a student's education or future educational opportunities, or placing a student in reasonable fear of harm to his or her person, damage to his or her property, or damage to his or her education or future educational opportunities; or

b.      Insulting or demeaning any student or group of students in such a way as to cause substantial disruption in, or substantial interference with, the orderly operation of the school or that student's or students' education or future educational opportunities.

VI.     The coverage under this Endorsement shall be the sole and exclusive coverage under this Policy for **Claims** based upon, arising out of, resulting from, or in any way involving or related to **Harassment or Bullying Activities**, whether alone or in connection with any other claims. Except as set forth in this Endorsement, there shall be no coverage under this Policy for any **Claim** based upon, arising out of, resulting from, or in any way involving or related to **Harassment or Bullying Activities**.

VII.    The term **Related Claims** as used in this Endorsement means:

**Related Claims** means all **Claims** for **Harassment or Bullying Activities** or **Wrongful Acts** based upon, arising out of, resulting from, or in any way involving, the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances situations, transactions or events, whether related logically, causally or in any other way, or the same persons.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
(Authorized Representative)

ENDORSEMENT NO._____

**US PROFESSIONAL INDEMNITY - CYBER EXCLUSION**

(Cyber Act, Cyber Incident and Data Breach exclusion)

This Endorsement, effective at 12:01 a.m. on  08/01/2023    , forms part of

     Policy No. ELL0950761-05
     Issued to   Union Institute & University
     Issued by  Indian Harbor Insurance Company

In consideration of the premium charged:

1.    This Policy shall not apply to any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a:

    a.    **Cyber Act;**

    b.    **Cyber Incident**; or

    c.    **Data Breach**.

2.    For the purposes of this endorsement, the following terms shall have the meanings set forth below:

    a.    "**Computer System**" means any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the Insured or any other party.

    b.    "**Cyber Act**" means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any **Computer System**.

    c.    "**Cyber Incident**" means:

        i.    any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any **Computer System**; or

        ii.    any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any **Computer System**.

    d.    "**Data Breach**" means:

        i.    the theft, loss, access to, acquisition of, or unauthorized or unlawful use or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit or payment card information, health information, biometric data or any other type of non-public information, involving access to, processing of, use of or operation of any **Computer System**; or

        ii.    the violation of any statute, regulation, common-law, or any other law regulating or protecting access to collection, use or disclosure of, or failure to protect any non-public confidential or personal information in the form of **Electronic Data**.

PGU 1133 0122

e.     **"Electronic Data"** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PGU 1133 0122

## ENDORSEMENT #

This endorsement, effective 12:01 a.m.  08/01/2023 , forms a part of Policy No.  ELL0950761-05

issued to  Union Institute & University

by  Indian Harbor Insurance Company

## SERVICE OF PROCESS

The Superintendent of Insurance of the State of Ohio is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Ohio to whom such process shall be forwarded by the Superintendent of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

XL-OHSOP 11 10

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Alabama** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **California** | **General: All applications for commercial insurance, other than liability insurance:** Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.<br><br>**All applications for liability insurance and all claim forms:** For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance that such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**WARNING: All Workers Compensation Insurance:**
Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:
1.  obtaining any benefit or payment,
2.  increasing any claim for benefit or payment, or
3.  obtaining workers' compensation coverage under the Administrative Workers' Compensation Act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

<u>Our Privacy Promise</u>

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

<u>Collection and Sources of Information</u>

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

• Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
• Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 0119                                                                                    Page 2 of 3

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

<u>Access to Your Information</u>

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator.  Other limitations on the premiums and payments also apply.

---

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.